JOHN FRANKLIN FORT, PROSECUTOR, v. COURT OF COMMON PLEAS OF MONMOUTH COUNTY AND CHARLES SIMONSON, Jr.

Submitted March 16, 1916—Decided April 27, 1916.

The provision of the Inns and Tavern act of 1913 (*Pamph. L.*, *p.* 574), providing that "whenever the ratio between the population of any city, town, township, borough or village, and the number of licensed places situate therein for such sale of said liquors shall exceed the ratio of five hundred to one, additional licenses

for sale of such liquors therein * * * may be issued," &c., expressly excludes from its provisions hotels containing upwards of fifty spare rooms and beds. Consequently, the number of such licensed hotels having upwards of fifty spare rooms and beds cannot be taken into consideration in computing the ratio of the licensed places to the population, since the provision of the statute is only intended to regulate the number of inns and taverns having less than fifty spare rooms and beds.

On *certiorari.*

Before Justices PARKER, MINTURN and KALISCH.

For the prosecutor, *Fort & Fort.*

For the defendants, *Durand, Ivins & Carton.*

The opinion of the court was delivered by

KALISCH, J. The prosecutor attacks the validity of the action of the Court of Common Pleas of Monmouth county in granting to Charles Simonson, Jr., a license to keep an inn and tavern in the borough of Spring Lake, which had a population of eight hundred and fifty-three, by the census of 1910, on the ground that the granting of such license was in violation of the act of 1913 (*Pamph. L., p.* 574), in that the statutory number of licenses based upon a ratio population of five hundred to one licensed place as prescribed by the act had been exhausted, there being at the time of the granting of such license three licenses in force and effect in the borough which had been granted to the Hotel New Monmouth, the Hotel Essex and Sussex and the Breakers, each of which contained upwards of fifty spare rooms and beds.

Counsel for the prosecutor contend that though the licensing of hotels containing upwards of fifty spare rooms and beds is by express words in the act not controlled by the ratio of population, that nevertheless on the application for a license for an inn and tavern containing less than fifty spare rooms and beds, such licenses must be taken into consideration and counted on the basis of population.

This contention is asserted to be founded upon a provision in the act (on *p.* 576), which reads: "Whenever the ratio between the population of any city, town, township, borough or village, and the number of licensed places situate therein for such sale of said liquors shall exceed the ratio of five hundred to one, additional licenses for sale of such liquors therein * * * may be issued at the discretion of the licensing authority, but only in the manner following." The statute then prescribes a method of procedure whereby an applicant for a license to keep an inn and tavern of less than fifty spare rooms and beds may obtain a license when the ratio of existing licenses to population is less than one to five hundred. This procedure was fully discussed and considered by this court in an opinion by Mr. Justice Parker in *Tilton* v. *Court of Common Pleas of Ocean County,* 87 *N. J. L.* 47. The licensee in the present case did not resort to this procedure and defends the legality of the issuance of the license to him upon two grounds: (1) That the words "additional licenses" and "licensed premises" in the act quoted do not include within their meaning, licensed hotels, containing upwards of fifty spare rooms and beds. (2) That if licensed hotels upwards of fifty rooms are within the meaning of the act, then under another provision of the act (on *p.* 575), which provides that in any city bordering upon the Atlantic ocean the population shall be taken to include the transient population, and such population shall be computed as of the first day of August in any year. Spring Lake, which borders on the Atlantic ocean, and which has a transient population of four thousand, therefore, is entitled, obviously, to more than three licenses, on the basis of one license for every five hundred of population.

The facts in this case are undisputed. It is stipulated between counsel that Spring Lake is a borough bordering on the Atlantic ocean, having at the census of 1910 a population of eight hundred and fifty-three inhabitants and a transient population of four thousand August 1st, 1914; that the prosecutor and objector to the granting of the license is a resident real estate owner and taxpayer of Spring Lake; that three licenses to keep inns and taverns, being the three hotels

mentioned, each of which contains upwards of fifty spare rooms and beds were granted by the Court of Common Pleas of Monmouth county; that the license applied for and granted in the present case was for a new place and not a hotel having at least fifty sleeping rooms, nor a picnic ground or recreation place comprising at least one acre, nor was it a building entirely occupied by a regularly organized club or association; that though the three hotel licenses were each granted for one year, it was with the knowledge that the hotels would be open only during the summer months and that they have in fact only operated during the summer months, and that there is no licensed hotels in Spring Lake where the people are accommodated during the entire year.

It is obvious from a plain reading of the act that in so far as inns and taverns are concerned or places where liquors are sold in quantities less than one quart it was the intention of the legislature to regulate and fix the number of such places by a ratio of population to the number of licenses granted to places coming within that description. For the act provides that no license to keep an inn or tavern or to sell spirituous, vinous, malt or brewed liquors in quantities less than one quart in any city, town, township, borough or village shall be granted by any court, &c., unless, or until the ratio of population therein to the number of licenses issued shall be greater than five hundred to one and then only pursuant to the act now being considered. The act then excepts from the operation of this provision, (1) Premises in which the business of selling liquors was lawfully carried on at some time within a year preceding the passage of the act of 1913, provided that such business was not abandoned at any time during the year. (2) Hotels having at least fifty spare rooms and beds for the accommodation of boarders, transient and travelers. (3) Picnic or recreation grounds comprising at least one acre. (4) A building entirely occupied by a regularly organized club or association.

It is to be observed that the act places no limitation on the number of licenses that may be granted to hotels of the designated number of rooms or to picnic or recreation grounds

of certain dimensions or to regularly organized clubs occupying entire buildings.

It may very well be that in making these places exempt from the operation of the·provision in the act relating to the population basis the legislature had in view the fact that, at least, as to summer hotels and clubs the use of the license privilege would be of a temporary character. That it was the intention of the legislature to put a check upon the increase in the number of inns and taverns of less than fifty spare rooms and beds and on saloons in cities is manifest.

The number of such latter places is regulated by the ratio of population, as stated, to the number of licenses granted. The licensed premises or places, therefore, which the legislature intended to limit were not fifty-room hotels, picnic grounds and clubs of the character above described, but inns and taverns of less than fifty spare rooms and beds, and saloons. This being so, it becomes clear that the terms "additional licenses" and "the number of licensed premises" cannot in the very nature of the provisions of the act refer to hotels having fifty spare rooms and beds, picnic and recreation grounds and clubs of the character mentioned, but the language used obviously refers to inns and taverns of less than fifty spare rooms and beds or saloons which were lawfully carried on at some time within a year, immediately preceding the passage of the act of 1913, and provided such business was not abandoned at the place licensed during that year. Such places meeting these conditions were entitled to be licensed irrespective of the ratio of population to the licenses granted. In order, however, to put a check upon the increase of the number of inns and taverns having less than fifty spare rooms and beds and saloons it was the clear legislative design that licenses granted to inns and taverns or saloons which met with the above statutory requirements, were to be counted on the basis of ratio of population, as fixed by the statute, whenever an application was made for a license for a new place.

It is not pretended in the present case that there was any other license granted by the court than those granted to the

three hotels mentioned, when the licensee applied for and obtained his license to keep an inn and tavern having less than fifty spare rooms and beds, and that, therefore, the granting of such license was not in violation of the statute.

Counsel for the prosecutor cite *Gundrum* v. *South Amboy,* 86 *N. J. L.* 450, to support their contention that all licenses count on the number limited, to one in five hundred, but an examination of that case shows that the precise question raised here was not there considered. This appears from what Mr. Justice Trenchard, who delivered the opinion of this court says (on *p.* 452) : "Now the depositions show that when the license in question was granted, the city of South Amboy had, exclusive of the one in question, thirty places licensed for the sale of spirituous, vinous, malt or brewed liquors in quantities less than one quart. From the deposition it also appears that the population of the city then was seven thousand and seven. * * * Since therefore the ratio of population to the number of licensed places was not greater than five hundred to one the license was prohibited by the statute, unless it'is within some one of the provisos or exceptions contained therein."

The views expressed by the learned justice are not in conflict with the views expressed here, but rather in harmony with the general idea that the ratio of population requirement is strictly limited to the ordinary inn and tavern and saloon class. See also *Blake* v. *Pleasantville,* 87 *N. J. L.* 426, 430, 431. Counsel for defendant have urged upon us that it was stipulated in this case that the transient population of Spring Lake in the contemplation of the statute, on August 1st, 1914, was upwards of four thousand, and that there were at that time only three hotels in the borough and that if they are to be counted and the license based on the population of August 1st, 1914, the license was properly granted, because the licenses issued were not greater than one to each five hundred of such population.

As we have reached a conclusion sustaining the validity of the license on another ground, we do not deem it necessary to express any opinion on the soundness of this contention,

except to point out that the act refers exclusively to cities bordering on the Atlantic ocean and Spring Lake is a borough.

The writ will be dismissed and the proceedings of the Court of Common Pleas affirmed, without costs.